## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NORTH AMERICAN FABRICATORS TRADERS ACTIVITIES, INC. : : Plaintiffs, : : v. : : UNITED STATES; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; U.S. CUSTOMS & BORDER PROTECTION COMMISSIONER, : : Defendants. : | **Summons** Court No. 23-00151 |

NORTH AMERICAN FABRICATORS TRADERS
ACTIVITIES, INC.                                           :
                                                          :
            Plaintiffs,                                   :
                                                          :
    v.                                                    :
                                                          :
UNITED STATES;                                            :
OFFICE OF THE UNITED STATES TRADE                         :
REPRESENTATIVE; U.S. TRADE REPRESENTATIVE;                :
U.S. CUSTOMS & BORDER PROTECTION;                         :
U.S. CUSTOMS & BORDER PROTECTION                          :
COMMISSIONER,                                             :
                                                          :
            Defendants.                                   :

**Summons**

Court No. 23-00151

## COMPLAINT

North American Fabricators Traders Activities, Inc. ("Plaintiff"), by its undersigned attorneys, alleges the following:

1.      This action concerns Defendants' unlawful imposition of *ad valorem* tariffs on goods, imported by plaintiff, from the Peoples Republic of China pursuant to Section 301 of the Trade Act of 1974 (19 U.S.C. § 2411) ("Trade Act"). The United States Trade Representative ("USTR") conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act. Section 304 of the Trade Act (19 U.S.C. § 2414) requires the USTR to determine what action to take, if any, within 12 months after initiation of the investigation. Within the 12 months following initiation of the investigation, the USTR determined to impose import tariffs on goods from China pursuant to Section 301(b) of the Trade Act on two groupings of tariff codes, commonly referred to as "List 1" and "List 2."  USTR subsequently implemented tariffs on additional tariff codes, known as "List 3" and "List 4A," but failed to do so within 12 months after initiation of the investigation. Section 307 of the Trade Act

(19 U.S.C. § 2417) authorizes USTR to modify a prior valid action under Section 301(b), but does not authorize USTR to impose additional tariffs not tied to the acts, policies or practices that are the subject of the investigation. USTR's determination to implement tariffs on List 3 and List 4 was not a valid modification of its initial action because it was not based on the acts, policies or practices covered by the investigation. The arbitrary manner in which Defendants implemented the List 3 and List 4 tariff actions also violates the Administrative Procedure Act ("APA"). USTR: (1) failed to provide sufficient opportunity for comment, e.g., requiring interested parties to submit affirmative and rebuttal comments *on the same day*; (2) failed to consider relevant factors when making its decision, e.g., undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made. Despite receiving over 6,000 comments, USTR was silent as to its consideration of those comments in promulgating List 3.

2.      The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund any duties paid by Plaintiff pursuant to List 3 and/or List 4A with interest as provided by law.

## JURISDICTION

3.      The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

4.      Plaintiff is an importer of various products subject to duties under List 3 or 4A.

5.      Defendant United States received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

6.      USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4.

7.      Ambassador Robert Lighthizer formerly held the position of USTR and served as the director of the Office of the USTR. In these capacities, he made numerous decisions regarding List 3 and List 4.

8.      Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under List 3 and List 4.

9.      Mark A. Morgan was the former Acting Commissioner of CBP. In this capacity, he oversaw CBP's collection of duties paid by Plaintiff under List 3 and/or List 4. Plaintiff has standing to sue because they are "adversely affected or aggrieved by agency action within the meaning of the APA. 5 U.S.C. § 702; 28 U.S.C. § 2631(i). Tariffs imposed by Defendants pursuant to List 3 and/or List 4A adversely affected and aggrieved Plaintiff because it was required to pay and did pay these unlawful duties.

## TIMELINESS OF THE ACTION

10.     A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

11.     Plaintiff contest action taken by Defendants that resulted in List 3 and List 4 and the subsequent imposition of tariffs on Plaintiff. *Notice of Modification of Section 301 Action:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018). Plaintiff's claims accrued at the earliest on September 24, 2018, when tariffs were first levied on goods on List 3 pursuant to the USTR's determination published in the Federal Register on September 21, 2018. *Id.* In some cases Plaintiff was granted an exclusion for the payment of List 3 duties and did not have to begin to pay them again until January 1, 2021. Plaintiff's claims accrued with respect to entries where List 4a goods were filed on or about September 1, 2019, when List 4a was implemented and Plaintiff began to pay List 4a duties on goods imported from China.

12.    The instant action was filed within two years of the date that Plaintiff paid the List 3 and List 4A duties.

## **RELEVANT LAW**

13.    Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id.* § 2411(b), (c)(1)(B).

14.    Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

15.    Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I.  USTR's Investigation

16.     On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).  According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id*.

17.     On August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

18.     On March 22, 2018, USTR released a report announcing the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE , *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer,

intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id*. at 17.

19.    On March 22, 2018, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimate that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.    USTR    also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id*.; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## II.    Lists 1 & 2

20.    Between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by the so-called Lists 1 and 2.

21.    On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id*. at 14,907. USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

22.     On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id*. at 28,711.

23.     At the same time that it finalized List 1, USTR announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation.  *Id*. at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id*. at 28,711-12.

24.     On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem* in List 2, comprising "279 tariff subheadings" whose

"annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

### III.   List 3 and 4

25.    Following USTR's issuance of the results of its investigation in March 2018, Defendants broadly expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the amount it had deemed "commensurate" with the findings of USTR's original investigation. Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties on the same value of imports from the United States. In response, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

26.    When USTR finalized List 1 in mid-June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States. *E.g.*, Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, THE HILL (June 15, 2018), *available at* http://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods ("The president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs on United States goods, services or agricultural products;

raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.'").

27.     On June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion—despite USTR having not yet implemented List 1 and List 2.  President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision. THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

28.     Acknowledging the purpose of the President's directive, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

29.     China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

30.     About one week later, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018). USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

31.     In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id*.; *see also id*. (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures,

USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id*.

32.    USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

33.    On July 10, 2018, President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g*., @realDonaldTrump, TWITTER (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonaldTrump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/ 1022079127799701504; @realDonaldTrump, TWITTER (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/ status/1022074252999225344.

34.    On August 1, 2018, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. Rather than addressing the practices that USTR investigated pursuant to Section 301 of

the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

35.     On August 7, 2018, USTR formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policyoffices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

36.     At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both initial and rebuttal comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. Approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id.*

37.     Just eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  Once  again, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motived his decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id*.

38.     Following the President's announcement, USTR published notice of the final list of products subject to an additional duty, a list commonly known as "List 3." 83 Fed. Reg. at 47,974. USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. *Id*. USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id*. USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id*.

39.     As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act.

40.     In the months that followed, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of*

13

*Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

41.     In May 2019, when the trade negotiations ultimately fell apart, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("List 3 Rate Increase Notice"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, USTR did not seek public comment but rather simply announced that the increase would occur. *Id.*

42.     The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of a limited number of products for which USTR granted exclusions from the duties. *See, e.g., Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

43.     On May 17, 2019, USTR announced its intent to proceed with List 4 covering even more products subject to additional duties. Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg.

22,564, 22,564 (May 17, 2019). USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id*.

44.     USTR invited the public to comment on proposed List 4 and participate in a hearing. *Id*.  The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. The timeline for participation in the hearing left little room for meaningful input as USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. *Id*.

45.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*. @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/realDonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

46.     On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019. *Id*. at 43,304. List 4b would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id*. at 43,305. Once again, USTR did not address any of the nearly

3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id*.

47.    As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act and pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency as a basis for this decision. *Id*.

48.    On August 30, 2019, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id*. at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id*.

49.    On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id*., an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate, *Notice of*

*Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

50.      In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/pressreleases/2019/december/  united-states-and-china-reach.

51.      The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint. Although the proposed duties on products covered by List 4B remain suspended, President Trump threatened to impose them if China did not meet its obligations under their limited trade deal. *See, e.g.*, @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/ status/1275252814206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

## **STATEMENT OF CLAIMS**

## **COUNT ONE**

## **(DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)**

52.      Paragraphs 1 through 51 are incorporated by reference.

53.      The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

54.      The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4A tariffs.

55.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 and List 4 on any such determination.

56.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated."   19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, more than a year after USTR initiated the Section 301 investigation on August 18, 2017.

57.     Section 307 of the Trade Act does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.

58.     Section 307 of the Trade Act does not authorize Defendants to increase tariff actions that are no longer "appropriate," but rather only to delay, reduce, or terminate such actions.

59.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4 are *ultra vires* and contrary to law.

## **COUNT TWO**

### **(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

60.     Paragraphs 1 through 59 are incorporated by reference.

61.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory

jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

62.     Defendants exceeded their authority under the Trade Act in promulgating List 3 and List 4 and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

63.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

64.     Defendants also promulgated List 3 and List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court

(1) declare that Defendants' actions resulting in tariffs on products covered by List 3 and List 4A are unauthorized by, and contrary to, the Trade Act;

(2) declare that Defendants arbitrarily and unlawfully promulgated List 3 and List 4 in violation of the APA;

(3) vacate the List 3 and List 4 rulemaking;

(4) order Defendants to refund, with interest as provided for by law, any duties paid by Plaintiff pursuant to List 3 and List 4A;

(5) permanently enjoin Defendants from applying List 3 or List 4 against Plaintiff and collecting any duties from Plaintiff pursuant to List 3 or List 4A;

(6) award Plaintiff its costs and reasonable attorney fees; and

(7) grant such other and further relief as may be just and proper.


Respectfully submitted,

*/s/ Joseph M. Spraragen*
Joseph M. Spraragen

Dated: August 7, 2023

Grunfeld, Desiderio, Lebowitz,
Silverman & Klestadt LLP
*Counsel to Plaintiff*
599 Lexington Avenue
New York, NY 10022
212-557-4000
jspraragen@gdlsk.com

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to USCIT R. 4(b) and (h), I hereby certify that on August 7, 2023, I caused copies of Plaintiff's Summons and Complaint to be served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

*/s/ Joseph M. Spraragen*
Joseph M. Spraragen